Affirmed and Memorandum Opinion filed July 31, 2003









Affirmed and Memorandum Opinion filed July 31, 2003.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-01-01025-CV

____________

 

ANDREW
KAWECKI AND JOANNA KAWECKI, Appellants

 

V.

 

INTERNATIONAL
BANK OF COMMERCE, Appellee

 



 

On Appeal from the
189th District Court

Harris County, Texas

Trial Court Cause
No. 00-17597

 



 

M E M O R A N D U M    O P I N I O N

Appellants, Andrew and Joanna Kawecki, appeal from a summary
judgment dismissing their three DTPA claims of failure to disclose,
misrepresentation, and breach of warranty, plus their claims of negligence,
negligent misrepresentation, fraudulent concealment and civil conspiracy
against appellee International Bank of Commerce (“IBC”).  We affirm.

Factual Background

The Kaweckis purchased an unfinished home located at 17206
Cedar Placid Lane, Houston, Texas in the Northgate Forest subdivision on
September 2, 1998 from IBC, successor to University State Bank.[1]  Over a year earlier, on August 5, 1997,
Northgate Forest Community Association, Inc. filed a “Notice of Noncompliance
with Dedicatory Instruments” in the real property records of Harris County,
which listed six violations of deed restrictions on the property.  The homeowners= association informed IBC about the
notice.  IBC corrected some of the
violations, but did not bring the landscaping into full compliance with the
deed restrictions.  The property was not
in compliance with the deed restrictions while it was for sale.  

The Kaweckis signed an “as is” earnest money contract on
August 1, 1998 to purchase the home, which contained an addendum disclosing the
deed restrictions.  They never had direct
contact with anyone from IBC or the title company prior to the closing.  At the closing on September 2, 1998, IBC
executed and delivered a Special Warranty Deed to the Kaweckis.  The Kaweckis signed an amended title
commitment that day that listed the notice of noncompliance on an interior
page.  Before the closing no one advised
them the property had a recorded notice of noncompliance with deed
restrictions.  Less than six weeks later,
the Kaweckis received a demand letter from the homeowners= association ordering them to bring
the property into compliance with deed restrictions.  They incurred unplanned debt and spent
substantial sums of money to comply with the deed restrictions.  They contend they would not have bought the
property if IBC had disclosed the Notice of Noncompliance to them and if they
had known they would be required to install the landscaping immediately after
purchasing the house.

Procedural Background

In April 2000, the Kaweckis sued IBC for damages related to
the nondisclosure of the notice of noncompliance with the deed restrictions.[2]  In their live pleading the Kaweckis alleged
DTPA violations of failure to disclose information, misrepresentation, and
breach of warranty as well as negligence, negligent misrepresentation,
fraudulent concealment[3]
and civil conspiracy to defraud claims. 
They sought economic, mental anguish and treble damages along with
attorneys= fees.  

In April 2001, IBC filed a no-evidence motion for summary
judgment, and alternatively, a partial motion for summary judgment to which the
Kaweckis responded.  After overruling the
Kaweckis= special exceptions and objections to
IBC=s motion for summary judgment, the
trial court granted the motion for summary judgment without stating the basis
of its ruling.  The Kaweckis filed a
notice of appeal.








Issues Presented

The Kaweckis= brief lists the following issues: 

A.        Whether there was more than a scintilla of evidence of 1)
failure to disclose under the DTPA, 2) civil conspiracy, 3) fraudulent concealment,
4) detrimental reliance, 5) producing causation, 6) breach of warranty, 7)
mental anguish, and 8) economic damages;  


B.        Whether the sale of real property “as is” is a complete
defense to a DTPA claim for failure to disclose;

C.        Whether the earnest money contract=s clause regarding the survival of representations of
the parties applied also to the “as is” clause in the earnest money contract;

D.        Whether, even if the “as is” clause survived closing, the “as
is” clause waived the Kaweckis= rights under the fraudulent nondisclosure provisions
of the DTPA;

E.         Whether imputed notice of the Harris County Real Property
Records defeats the Kaweckis= right to submit evidentiary issues of intent to
induce and detrimental reliance to the trier of fact; and 

F.         Whether there is a presumption of intentional misconduct
under the DTPA when the consumer can show objective manifestations that a
defendant acted intentionally.

Kaweckis= Waiver of
Issues

The Kaweckis did not assert a general assignment of error
that the trial court erred in granting the summary judgment.  When, as here, the trial court renders a
general summary judgment, the nonmoving party on appeal must raise a general
point of error stating generally that the trial court erred in granting the
summary judgment, or the nonmoving party must negate each specific ground
raised in the motion and on which the trial court could have granted summary
judgment.  Malooly Brothers, Inc. v.
Napier, 461 S.W.2d 119, 121 (Tex. 1970). 
Therefore, our review is limited to the issues the Kaweckis have raised
and argued on appeal.  The
remaining claims are waived.








Standard of Review

In reviewing a summary judgment in which the trial court has
not provided the basis for its decision, we must review each ground asserted in
the motion and affirm the trial court=s judgment if any of these grounds is
meritorious.  See Star‑Telegram,
Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995); Rogers v. Ricane Enter.,
Inc., 772 S.W.2d 76, 79B80 (Tex. 1989).  As
referenced above, the appellant is required to specifically attack “each
possible basis for summary judgment to avoid a waiver of those grounds,” unless
appellant included a general issue complaining of summary judgment.  Warner v. Orange County, 984 S.W.2d
357, 358 (Tex. App.CBeaumont 1999, no pet.) (citing Parrish v. Brooks, 856
S.W.2d 522, 527 (Tex. App.CTexarkana 1993, writ denied). 
“If summary judgment may have been granted, properly or improperly, on a
ground not challenged, the summary judgment must be affirmed.”  Warner, 984 S.W.2d at 358 (citing Holloway
v. Starnes, 840 S.W.2d 14, 23 (Tex. App.CDallas 1992, writ denied)).

The function of a summary judgment is not to deprive a
litigant of its right to a full hearing on the merits of any real issue of fact
but is to eliminate patently unmeritorious claims and untenable defenses.  See Gulbenkian v. Penn, 151 Tex. 412,
416, 252 S.W.2d  929, 931 (1952).  A no‑evidence summary judgment is
essentially a pretrial directed verdict, to which we apply the same legal
sufficiency standard of review.  Id.  








A no‑evidence summary judgment should be sustained in
any of the following situations:  (1)
there is a complete absence of proof of a vital fact; (2) the court is barred
by rules of law or evidence from giving weight to the only evidence offered to
prove a vital fact; (3) the evidence offered to prove a vital fact is no more
than a mere scintilla; or (4) the evidence conclusively establishes the
opposite of a vital fact.  Dagley v.
Haag Eng’g Co., 18 S.W.3d 787, 793 (Tex. App.CHouston [14th Dist.] 2000, no
pet.).  We examine the evidence in the
light most favorable to the nonmovant and disregard all evidence and inferences
to the contrary.  Blan v. Ali, 7
S.W.3d 741, 747 (Tex. App.CHouston [14th Dist.] 1999, no pet.); Lampasas v. Spring
Ctr., Inc., 988 S.W.2d 428, 432 (Tex. App.CHouston [14th Dist.] 1999, no
pet.).  

A no‑evidence summary judgment is improperly granted if
the non-movant counters with more than a scintilla of probative proof to raise
a genuine issue of material fact.  Id.
 More than a scintilla of proof
exists when the proof “rises to a level that would enable reasonable and fair‑minded
people to differ in their conclusions.”  See
Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997) (quoting  Transp. Ins. Co. v. Moriel, 879 S.W.2d
10, 25 (Tex. 1994)).

A Rule 166a(i) motion must specifically set forth the
elements of the adverse party=s claim for which there is no evidence.  Tex.
R. Civ. P. 166a (i); Lake Charles Harbor & Terminal Dist. v. Bd.
of Trs. of Galveston Wharves, 62 S.W.3d 237, 241 (Tex. App.CHouston [14th Dist.] 2001, pet.
denied).  The motion cannot be conclusory
or generally allege that there is no evidence to support the claims.  Id. 
Unlike a movant for traditional summary judgment, a movant for a no‑evidence
summary judgment does not bear the burden of establishing a right to judgment
by proving each claim or defense.  Id.  By filing the motion, the movant shifts the
burden to the non-movant.  A non-movant
will defeat a Rule 166a(i) motion for summary judgment only by presenting the
court with some evidence on each element of his claim for which the movant
asserts there is no evidence.  The
non-movant is not required to marshal its proof, but should identify more than
a scintilla of evidence raising a fact issue on the challenged elements.  See Tex.
R. Civ. P. 166a (i) cmt. A non‑movant puts forth less than a mere
scintilla of evidence when that which is proffered is “so weak as to do no more
than create a mere surmise or suspicion”Cthe effect being that there is no
evidence offered. Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex.
1983); Hight v. Dublin Veterinary Clinic, 22 S.W.3d 614, 619 (Tex. App.CEastland 2000, pet. denied). 








IBC alternatively filed a
motion for a traditional summary judgment. 
In that instance, the movant has the burden of showing, with competent
proof, that no genuine issue of material fact exists and that the movant is
entitled to judgment as a matter of law. 
Tex. R. Civ. P. 166a;
Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985).  When a defendant is the movant for summary
judgment, the defendant has the burden to conclusively negate at least one
essential element of the plaintiff=s
cause of action or conclusively establish each element of an affirmative
defense.  Castillo v. Westwood
Furniture, Inc., 25 S.W.3d 858, 860 (Tex. App.CHouston [14th Dist.]
2000, no pet.).  If the movant’s motion
and summary judgment proof facially establish a right to judgment as a matter
of law, the burden shifts to the non‑movant to raise a material fact
issue sufficient to defeat summary judgment. 
Id.  In deciding whether a
disputed material fact issue precluding summary judgment exists, we resolve
every reasonable inference in favor of the non‑movant and take all
evidence favorable to the non‑movant as true.  Nixon, 690 S.W.2d at 548B49; Castillo, 25
S.W.3d at 860.

Summary judgment evidence
may include deposition transcripts, interrogatory answers, pleadings,
affidavits, and “other discovery responses referenced or set forth in the
motion or response.”  Tex. R. Civ. P. 166a(c).  The evidence must, however, be presented in a
form that would be admissible at trial.  See
United Blood Servs. v. Longoria, 938 S.W.2d 29, 30 (Tex. 1997).  The Kaweckis filed special exceptions and
made objections to IBC=s
motion for summary judgment, which the trial court overruled.  However, they assert no issues on appeal
complaining that the trial court erred in these rulings.  Therefore, any error in denying the
exceptions and objections is waived.  Tex. R. App. P. 38.1 (e).  

Negligence
and Civil Conspiracy Claims








The portion of the Kaweckis= brief regarding the grant of the
traditional summary judgment contains only argument that “[t]here are genuine
issue [sic] of material fact that are questions for a jury to consider on
fraud, misrepresentation, conspiracy, concealment, and DTPA issues” with no
record references and no citation to legal authority for elements of the
negligence and civil conspiracy claims. 
In fact, the Kaweckis do not address their negligence claim at all and
only present argument about the civil conspiracy claim.  The argument portion of a brief “must contain
a clear and concise argument for the contentions made, with appropriate
citations to [legal] authorities and to the record.”  Tex.
R. App. P. 38.1(h).  The Kaweckis
also make global references to several depositions for specific factual
support.[4]  As an appellate court, we are not required to
search the record, without more specific guidance from the Kaweckis, for a
scintilla of evidence raising a material fact issue on any claim, but in this
instance, particularly the Kaweckis= negligence and civil conspiracy
claims.  See Hall v. Stephenson,
919 S.W.2d 454, 467 (Tex. App.CFort Worth 1996, writ denied).  Likewise, we have no duty to search the
record for other possible trial court error. 
Harkins v. Dever Nursing Home, 999 S.W.2d 571, 573 (Tex. App.CHouston [14th Dist.] 1999, no pet.).  Therefore, we affirm summary judgment on
the negligence and civil conspiracy claims.   

No
Evidence of Damages

In its motion for a no‑evidence
summary judgment, IBC challenged all of the causes of action alleged by the
Kaweckis contending they had no evidence to support one or more of the
necessary elements of each claim. 
Essentially, IBC challenged the existence of any evidence of liability,
causation and damages.  IBC also argued
that as a matter of law, the Kaweckis could not recover due to IBC=s affirmative defenses of
actual and constructive notice of deed restriction violations, and waiver due
to the “as is” provision in the Earnest Money Contract.








Finding it dispositive,
we address IBC=s
argument that there is no evidence of damages, an element common to all of the
causes of action asserted by the Kaweckis. 
The Kaweckis=
summary judgment evidence consisted of depositions, the affidavit of an
attorney for the homeowners=
association, Plaintiffs=
Second Supplemental Response to Defendants=
Request for Disclosure, and unauthenticated documents allegedly produced in
discovery.  We examine the Kaweckis= citations to this
evidence to determine whether it contains more than a scintilla of probative
evidence of damages.  See Stephan v.
Baylor Med. Ctr. at Garland, 20 S.W.3d 880, 891 (Tex. App.CDallas 2000, no
pet.).  

Economic Damages

To be entitled to damages
for DTPA violations, fraud and negligent misrepresentation, a party must plead
and prove economic damages.  See Gulf
States Utils.  Co. v. Low, 79 S.W.3d
561, 566B67 (Tex. 2002); Fortune
Prod. Co. v. Conoco, Inc., 52 S.W.3d 671, 681 (Tex. 2000); Formosa
Plastics Corp. USA v. Presidio Eng’rs and Contractors, Inc., 960 S.W.2d 41, 49
(Tex. 1998); Fed. Land Bank Ass’n v. Sloane, 825 S.W.2d 439, 442 (Tex.
1991).  Yet, the summary judgment
evidence conclusively proved the opposite of a vital factCnamely that the Kaweckis
suffered no economic damages.  

The Kaweckis understood,
before they bought the home, that the neighborhood was governed by deed restrictions.  Both Mr. and Mrs. Kawecki testified they
recognized they had to install landscaping after they bought the unfinished
home.  They knew there was a high
standard for landscaping in the Northgate subdivision.  They knew their new home had minimal landscaping
and they realized they would have to install landscaping comparable to that of
their neighbors.  Further, before buying
the home, Mr. Kawecki had even estimated it would cost approximately $25,000 to
install landscaping.  Their total landscaping
costs were less than this.  As part of
the summary judgment evidence, they introduced documents reflecting a total of
$18,445.54 incurred for landscaping.








The second part of the
Kaweckis= claim for economic
damages also is unsupported.  The
Kaweckis allege they had to make “significant, costly improvements to the
property far ahead of the time they would have implemented a major
relandscaping [sic] program.”  In their
brief, they charge they were forced to incur unplanned debt at high interest
rates to bring their home into compliance with the deed restrictions.  Yet, no evidence was presented to the trial
court to substantiate these allegations of damages.  In his deposition, Mr. Kawecki testified that
this lawsuit was all about the fact that they had to finish the landscaping
before they had planned and budgeted to do it. 
Their damages allegations imply that the Kaweckis were damaged by the
time value of money and a resulting injury to their credit, because they had to
borrow money to install the landscaping before they anticipated.  But, the record contains no evidence
addressing out-of-pocket costs for landscaping versus debt allegedly incurred,
the cost of carrying the alleged debt, or injury, if any, to their credit
rating due to borrowing for landscaping. 
Rather, in their deposition testimony before the trial court, the
Kaweckis specified the total cost of the landscaping installation as
their economic damages and submitted a document with back-up that listed
landscaping costs totaling $18,745.54.  

Because the Kaweckis (1)
admitted that before buying the home, they recognized a need to spend
approximately $25,000 to bring their landscaping in line with that of the
neighborhood; and (2) spent less than what they anticipatedC$18,745.54Con landscaping after
buying the home, coupled with no evidence specifying the cost of credit or
injury to their credit reputation, we find no evidence of economic
damages.  With no evidence of economic
damages suffered as a result of the alleged nondisclosure of the Notice of
Noncompliance, the Kaweckis could not recover on their causes of action for
DTPA violations, fraud or negligent misrepresentation.

Mental Anguish Damages








The Kaweckis also claim
they suffered mental anguish.   Under the
DTPA, if the trier of fact finds that the defendant acted “knowingly,” the
plaintiff also may recover damages for mental anguish and additional statutory
damages up to three times the amount of economic damages.  Tex.
Bus. & Com. Code Ann. ' 17.50 (b) (1) (Vernon
2002).  Damages for mental anguish cannot
be awarded without either direct evidence of “the nature, duration, or severity
of [plaintiffs=]
anguish, thus establishing a substantial disruption in the plaintiffs= daily routine, or other
evidence of a high degree of mental pain and distress that is more than mere
worry, anxiety, vexation, embarrassment, or anger.”  Saenz v. Fid. & Guar. Ins.
Underwriters, 925 S.W.2d 607, 614 (Tex. 1996); Parkway Co. v. Woodruff,
901 S.W.2d 434, 444 (Tex. 1995).  As the
non-movants to a no-evidence summary judgment motion, the Kaweckis were
required to introduce evidence of the “nature, duration, and severity of their
mental anguish.”  Id.  The record must reflect more than a scintilla
of evidence that the Kaweckis suffered “a high degree of mental pain and
distress”C”more
than mere worry, anxiety, vexation, embarrassment, or anger.”  Id. 
Mr. Kawecki testified in his deposition he suffered no mental anguish
outside of the aggravation of litigation. 
Mrs. Kawecki testified at her deposition that she was irritable and
angry, and at times she could not sleep at night.  In addition, she said she had severe muscle
spasms, headaches, and severe shaking pains in her arms.  However, she also admitted having been in an
auto accident in Houston that injured her as well as having undergone two
surgeries prior to moving to Houston that caused her postoperative pain.  In her deposition, she confessed that the
muscle spasms, headaches and shooting pains in her arms were remnants of her
two prior surgeries, not damages as a result of IBC=s conduct.  








Evidence in support of
mental anguish damages must provide specific details of the nature, duration
and severity of the mental anguish.  “Simply
because a plaintiff says he or she suffered mental anguish does not constitute
evidence of the nature, duration, and severity of any mental anguish that is
sufficient to show a substantial disruption of one=s daily routine.”  Gunn Infiniti, Inc. v. O=Byrne,
996 S.W.2d 854, 861 (Tex. 1999). 
Conclusory statements are not sufficient.  See Gonzales v.  Temple-Inland Mortg.  Corp., 28 S.W.3d 622, 626 (Tex. App.CSan Antonio 2002,
no pet.) (citing Gunn Infiniti, Inc., 996 S.W.2d at 861 and Ryland
Group, Inc. v. Hood, 924 S.W.2d 120, 122 (Tex. 1996)).  Other than their deposition testimony, the
Kaweckis produced no evidence of mental anguish such as affidavits or medical
records in response to IBC=s
motion for summary judgment.  None of the
summary judgment evidence gave specific details of the Kaweckis= mental anguish
attributable to IBC=s
nondisclosure of the Notice of Noncompliance with Dedicatory Instruments.  It did not establish a substantial disruption
in their daily routine, or other evidence of a high degree of mental pain and
distress that is “more than mere worry, anxiety, vexation, embarrassment, or
anger.”  Parkway, 901 S.W.2d at 444 (citation
omitted).  In other words, the Kaweckis= deposition testimony is
too conclusory to raise a genuine issue of material fact as to whether they
sustained mental anguish damages. 
Therefore, we hold that the Kaweckis presented no evidence of mental
anguish damages.

Conclusion

Because the Kaweckis
failed to provide a scintilla of evidence of economic or mental anguish damages
recoverable under any of their asserted claims, in particular those claims upon
which they presented issues and briefed on appeal, namely DTPA, fraud and
negligent misrepresentation, the trial court properly granted summary judgment.
 See Verinakis  v.  Med.
Profiles, Inc., 987 S.W.2d 90, 96 (Tex. App.CHouston
[14th Dist.] 1998, pet. denied).  The
first issue is overruled.

As a result of our
disposal of the first issue, we need not address the remaining issues, which
challenge whether IBC established the affirmative defenses of an “as is”
clause, waiver, and actual and constructive notice of a filing in the real
property records as a matter of law. 
Finding no error in the trial court=s
judgment, we affirm.

 

/s/        Wanda McKee Fowler

Justice

 

 

Judgment rendered and Memorandum
Opinion filed July 31, 2003.

Panel consists of Justices Yates,
Anderson, and Fowler.











[1]  IBC owned the
home as a result of foreclosure, after its borrower, a builder, defaulted. 





[2]  The Kaweckis
also sued First American Title Insurance
Company of Texas, Inc.; however, the trial court granted summary judgment in
favor of First American and severed it from the main case.  First American is not a party to this appeal.






[3]  As a preliminary matter, we note that the Kaweckis
have pled fraudulent concealment. 
Fraudulent concealment is an equitable doctrine that provides an
affirmative defense to the statute of limitations.  See Weaver v. Witt, 561 S.W.2d 792,
793 (Tex. 1977) (per curiam); Santanna Natural Gas Corp. v. Hamon Operating
Co., 954 S.W.2d 885, 890 (Tex. App.CAustin
1997, pet. denied).  Like the discovery
rule, proof of fraudulent concealment tolls accrual of limitations.  See Kanon v.  Methodist Hosp., 9 S.W.3d 365, 368 (Tex.
App.CHouston [14th Dist.] 1999, no pet.) (citing to Borderlon
v. Peck, 661 S.W.2d 907, 908 (Tex. 1983); Dougherty v. Gifford, 826
S.W.2d 668, 673 (Tex. App.CTexarkana 1992, no writ)).  It is not an independent cause of action.  Mayes v. Stewart, 11 S.W.3d 440, 452
(Tex. App.CHouston [14th Dist.] 2000, pet. denied); see
Chandler v. Chandler, 991 S.W.2d 367, 394 (Tex. App.CEl Paso 1999, pet. denied).  We believe the Kaweckis meant to plead
fraudulent nondisclosure.  Therefore, we,
like IBC and the trial court, will treat their fraudulent concealment claim as
one for fraudulent nondisclosure which requires proof of the same elements as
fraud.  Schlumberger Tech. Corp. v.
Swanson, 959 S.W.2d 171, 181 (Tex. 1997).





[4]  In addition, we note that both parties failed to file
any appendix to their briefs in violation of Tex.
R. App. P. 38.1 (j) (1) and 38.2 (a) (1).  In particular, ready access to
the Earnest Money Contract with its exhibit and addendums, the Special Warranty
Deed, and the Notice of Noncompliance would have been helpful to the Court.